516 A.2d 1302

Mayview State Hospital, Department of Public Welfare, Petitioner *v.* Caleb R. Martin, Respondent.

Submitted on briefs April 29, 1986, before President Judge CRUMLISH, JR., and Senior Judges ROGERS and KALISH, sitting as a panel of three.

*James S. Marshall,* Assistant Counsel, for petitioner.

*Caleb R. Martin,* respondent, for himself.

OPINION BY SENIOR JUDGE KALISH, August 28, 1986:

Mayview State Hospital, Department of Public Welfare, petitions for review of a State Civil Service Commission (Commission) order which sustained Caleb R. Martin's appeal from a five day suspension, and ordered that Martin be reimbursed for any loss of wages. We reverse and reinstate the suspension.

Mayview State Hospital is a state facility of the Department of Public Welfare, which provides care to emotionally and psychiatrically disturbed patients. Martin is employed as a Psychiatric Aide I at the hospital.

Martin was informed by a letter signed by the Official in Charge for the Secretary of the Department of Public Welfare, that he was being suspended for five days. The letter further informed Martin that the substance of the charge of patient abuse was that he "verbally threatened patient # 49977 on January 11, 1985 . . . in the dayroom. . . . Investigation reveals that the patient tapped you in a nonthreatening manner and calmly asked you to change the television set to another channel. You yelled at the patient saying, 'I have told you before not to touch me. Next time, I'm going to

punch you.' In addition, your statements were very up-
setting to another patient. We cannot and will not toler-
ate this type of behavior."

The only requirement of section 803 of the Civil
Service Act, Act of August 5, 1941, P.L. 752, *as amend-
ed,* 71 P.S. §741.803, with respect to disciplinary sus-
pensions of Civil Service Employees, is that they be for
good cause.[1] This has been interpreted to mean that the
relationship of the state and the employee is based on a
merit concept. Any personnel action by the state must
be scrutinized in the light of merit criteria, and must
touch upon competency and ability to perform the job.
*McCain v. Department of Education, East Stroudsburg
State College,* 71 Pa. Commonwealth Ct. 165, 454 A.2d
667 (1983).

After a hearing, the Commission found that a patient
walked into the dayroom, tapped Martin on the shoul-
der, and asked him to change the television channel, at
which Martin jumped back and said, "I told you never
to touch me. Next time, I'll punch you"; that Martin's
verbal retort did not cause mental or physical harm to
the patient, nor was it likely to do so; that the appoint-
ing authority (Department of Public Welfare) gave the
suspension without good cause; that Martin's conduct
was not a threat of violence, but rather one of anger
expressed "in the form of hyperbole"; and that the evi-
dence failed to meet the appointing authority's own def-
inition of patient abuse, found in its regulations.

Our scope of review is to determine whether the
Commission abused its discretion or committed an er-
ror of law in holding that the suspension was without

---

[1] Section 741.803 of the Civil Service Act, 71 P.S. §741.803,
provides that an appointing authority may *for good cause suspend
for disciplinary purposes* an employee holding a position in the
classified service.

good cause. *Corder v. Civil Service Commission*, 2 Pa. Commonwealth Ct. 462, 279 A.2d 368 (1971).

If the charges on which the suspension is based and the findings of the Commission relate to the merits of the employee's work performance, then the Commission must uphold the appointing authority's disciplinary action. The Civil Service Commission's duty is to make the record, find the facts, *and determine as a matter of law* whether its findings require the conclusion that the employee was removed for good cause. *Omelchenko v. Housing Authority of the County of Lebanon*, 58 Pa. Commonwealth Ct. 494, 428 A.2d 274 (1981).

Good cause may consist of one or more of such matters as conduct bringing disrepute to the service, or conduct in connection with the patient that may be abusive even though it may not result in physical or emotional harm. In fact, the guidelines and regulations of the hospital, included as part of the record, set forth a number of categories which may constitute abuse and concludes, "The guide cannot cover all incidents and types of abuse and is not intended to do so." Martin's conduct should be considered for what it was, not whether technically it met a certain definition of serious patient abuse.

Since the evidence clearly shows poor performance and poor conduct in connection with the treatment of an emotionally and/or psychiatrically disturbed person, the Commission was required under the law to uphold the appointing authority's decision of suspension. Only if the charge of good cause is not made out may the Commission modify the appointing authority's action and void the suspension. *Omelchenko.*

Accordingly, we reverse the Commission, and reinstate the suspension.

ORDER

Now, August 28, 1986, the order of the State Civil Service Commission, Appeal No. 5633, dated July 30, 1985, is reversed. The action of Mayview State Hospital, Department of Public Welfare, suspending Caleb R. Martin for five days, is reinstated.

---

DISSENTING OPINION BY PRESIDENT JUDGE CRUMLISH, JR.:

I respectfully dissent.

I disagree with the majority's conclusion that the Commission was required to uphold the appointing authority's decision.

In civil service cases, *if* charges on which a removal is based (1) relate to the merits of the employee's work performance *and* (2) are supported by the Commission's *own* findings, the Commission must uphold the appointing authority's disciplinary action. *Omelchenko v. Housing Authority of the County of Lebanon,* 58 Pa. Commonwealth Ct. 494, 428 A.2d 174 (1981). The charge was patient abuse. Yet, although this charge relates to the merits of Martin's work performance, it is not supported by the *Commission's* findings. The Commission found that Martin's verbal retort of anger (not violence), expressed in hyperbole, did not cause the patient mental or physical harm and was not likely to do so. It concluded that Martin's conduct did not meet the appointing authority's own definition of "abuse" (any act which may cause or causes actual physical or emotional harm to a patient) and, therefore, did not constitute good cause for the suspension.

I would affirm the Commission's decision.